**STATE of Minnesota, Respondent,**

v.

**William D. HATTON, Appellant.**

**No. C7-86-297.**

Court of Appeals of Minnesota.

Nov. 10, 1986.

Review Denied Jan. 16, 1987.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Minneapolis, for respondent.

Steven P. Russett, St. Paul, for appellant.

Considered and decided by RANDALL, P.J., and FOLEY and HUSPENI, JJ., with oral argument waived.

## OPINION

RANDALL, Judge.

Appellant William Hatton appeals his convictions of first degree criminal sexual conduct and kidnapping. He also appeals his sentence to concurrent terms of 108 months for criminal sexual conduct, and 86 months for kidnapping.

We affirm the conviction but remand for resentencing.

## FACTS

B.K.M. and a friend attended an after hours party in Minneapolis the morning of June 29, 1985. Mark Hatton, also at the party, approached B.K.M. and offered her a ride home. After asking her friend to accompany her outside, B.K.M. and Mark got into his car. B.K.M. did not, however, close the passenger door, and continued to converse with her friend who stood a few feet away.

Mark suddenly pulled away from the curb forcing B.K.M. to close the car door. He parked the car around the corner, grabbed and kissed her, until she pushed

him away and got out of the car. As she walked back toward the party, B.K.M. met appellant (Mark Hatton's brother) and Michael Garry. Appellant offered B.K.M. a ride home, claiming her friend had already left. She declined, telling appellant she was afraid because Mark Hatton had assaulted her. However, after appellant promised to get her home safely, B.K.M. accepted the ride. Mark Hatton and Michael Garry rode in the back seat, and appellant and B.K.M. rode in front.

During the trip, appellant began disregarding B.K.M.'s directions to her home. She demanded appellant stop and let her out of the car. Garry, noticing how upset B.K.M. was, climbed out of the car window and opened B.K.M.'s door so she could get out. As they were walking away from the car, Mark Hatton jumped Garry, beating and kicking him until Garry was unconscious. According to a witness' testimony, appellant did not try to prevent the beating.

Mark Hatton forced B.K.M. into the lowered rear seat of the station wagon. He put a jacket over her head, and raped her vaginally and orally. The car stopped, Mark Hatton changed places with appellant, and appellant raped B.K.M. The assaults lasted thirty to sixty minutes.

B.K.M. was then transferred to the floor of the front seat of another car. With the jacket still covering her head, Mark Hatton tied B.K.M.'s hands behind her with pieces of her skirt. After ten minutes, she was put in the trunk and taken to the Parkway Motor Hotel.

Appellant tried to rent a room at 6:30 or 7:00 a.m., but was told they were full and that a clean room would be available at 9:00 a.m. Appellant left and returned with Mark Hatton, between 7:30 and 7:45 a.m., and offered to rent a dirty room. At that moment, the hotel maid notified the desk clerk that a clean room was available.

B.K.M. was led into Room 158, where her glasses were taken from her and a blanket was put over her head. She was then raped vaginally and orally by both appellant and Mark Hatton. B.K.M. testified she feared for her life and was too afraid to scream. She was able to escape after Mark Hatton went into the bathroom to use the phone and appellant fell asleep. She ran to the next room where the hotel maid was cleaning. The maid testified that B.K.M., naked from the waist down, pushed the door open, hysterical, hollering that two men were going to kill her. The maid called the desk clerk, notified him of the rape and told him to call the police.

When Officers Gardner and Billmore arrived, B.K.M. informed them that she had been raped by the men in Room 158. The police observed cuts on her knee and elbow and red marks on her wrists. B.K.M. was dressed in her blouse and had a towel wrapped around her waist. Mark Hatton was arrested in the hallway outside Room 158 and appellant was found hiding under the bed.

A search of Room 158 uncovered fabric from B.K.M.'s skirt, appellant's underwear and a towel located under a mattress, and a pair of socks in front of the dresser. Under the day bed cushion the officers found B.K.M.'s glasses and pieces of her skirt. B.K.M. identified the jacket worn by Mark Hatton at the time of his arrest as the same jacket used to cover her head during the assaults in the car. She also described the two cars in which she had ridden during the abduction, as well as the contents of the trunk of the second car.

B.K.M. was given a sexual assault examination at Hennepin County Medical Center. Seminal fluid tested from a vaginal swab and a piece of B.K.M.'s skirt found on the day bed were consistent with appellant, Mark Hatton, or both of them. Hair found on the bed sheet were more consistent with appellant's hair than Mark Hatton's. In addition, sulfuric acid from a car battery was found on B.K.M.'s jacket and grease was found on her blouse.

Appellant testified that he met B.K.M. in December 1983, and paid her to have sex with him at the Parkway Hotel where he was then living. He testified she willingly went with Mark and giggled when she saw

Mark Hatton beating Garry. Appellant stated that he drove B.K.M. and Mark Hatton to the Parkway so they could have consensual sex, and that he did not have intercourse with B.K.M. He testified that he fell asleep on the day bed and woke up shortly before he was arrested.

At trial, appellant called as witnesses some people who had attended the after hours party. They testified that Mark Hatton and B.K.M. were chatting amicably in Hatton's car at 7:00 a.m. June 29, 1985. The witnesses, however, did not give this information to the police or the county attorney before trial. One witness refused to talk to the investigators. Another witness failed to give the investigator information to which she testified at trial. This witness' credibility was impeached during cross-examination. The jury found appellant guilty of first degree criminal sexual conduct and kidnapping.

### ISSUES

1. Did the trial court err by admitting photographs of Michael Garry's injuries inflicted by Mark Hatton?

2. Did the trial court err by excluding impeachment evidence on B.K.M.'s reputation for untruthfulness?

3. Was appellant's post-arrest silence improperly admitted at trial and during the prosecutor's closing argument?

4. Did the trial court improperly compute appellant's sentence?

### ANALYSIS

### I.

*Standard of Review*

Appellant argues he was denied his constitutional right to a fair trial because the trial court admitted irrelevant and prejudicial photographs of William Garry taken after Garry was beaten by Mark Hatton. Appellant claims the photographs were irrelevant because he was not charged with Garry's beating. He also claims the photos inflamed the jury's passions, causing the jury to be unfairly prejudiced against ap-

pellant. The State argues the photographs accurately depicted Garry's condition, of which there was testimony at trial, and were relevant to appellant's claim that the victim consented to sex.

■ The trial court has broad discretion to make evidentiary rulings. The admission of photographs is in the discretion of the trial judge and appellant must show abuse of discretion to reverse the trial court's ruling. *State v. Daniels,* 361 N.W.2d 819, 828 (Minn.1985).

"Photographs are generally admissible where they accurately portray anything which is competent for a witness to describe orally, and [where] they are relevant to some material issue." *State v. Durfee,* 322 N.W.2d 778, 785 (Minn.1982). As defined by the Minnesota Rules of Evidence,

"[r]elevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Minn.R.Evid. 401.

■ The photographs are relevant to consideration of appellant's consent defense. Mark Hatton attacked and beat Garry after Garry helped B.K.M. escape from appellant's car. B.K.M. testified that she saw Mark Hatton repeatedly kick Garry, although she did not see the ultimate extent of his injuries. The photographs depict events witnessed by B.K.M. during her abduction. They tend to show that she was being held against her will and that Garry, while attempting to help B.K.M., was beaten for his efforts. Garry had no reason to help B.K.M. "escape" if she was voluntarily riding in appellant's car. The court properly admitted the photographs to corroborate B.K.M.'s testimony regarding lack of consent and her fear of appellant and his brother.

### II.

*Character Evidence*

■ The trial court excluded testimony offered by appellant on B.K.M.'s reputation

for untruthfulness. The court based its exclusion on Minn.R.Evid. 608(b), which limits admission of character evidence concerning specific instances of conduct. The court's ruling under 608(b) was erroneous because appellant did not seek admission of specific instances of conduct. The court also found that the prejudice that would result from admission outweighed the probative value of the testimony. That trial court ruling was discretionary and will not be disturbed on appeal absent clear abuse. We find no clear abuse of discretion.

■ Appellant also argues that he is entitled to have this evidence admitted under Minn.R.Evid. 608(a), which limits an attack on a witness' credibility to testimony of character for "truthfulness or untruthfulness, and * * * only after the character of the witness for truthfulness or untruthfulness has been attacked." Minn.R.Evid. 608(a). The court did not allow the impeachment testimony under any of appellant's theories. We hold the trial court's 608(a) ruling to be a proper exercise of discretion.

■ However, even if exclusion of the evidence were error, appellant failed to show how he was prejudiced. *See State v. Graham*, 371 N.W.2d 204, 210 (Minn.1985). We find appellant was not prejudiced by the exclusion. The jury had full opportunity to judge B.K.M.'s credibility during cross-examination. Appellant was allowed to impeach B.K.M.'s testimony that she had not met appellant before. We hold the exclusion of evidence concerning B.K.M.'s reputation for untruthfulness was not an abuse of discretion.

### III.

#### *Appellant's Post-Arrest Silence*

Appellant claims that the State improperly elicited appellant's testimony that he remained silent after arrest and that the State improperly mentioned his post-arrest silence during its closing argument. Appellant did not object to these statements at trial. Appellant argues, however, that we should review this issue under the rule that plain errors affecting substantial rights are reviewable on appeal, even though not brought to the attention of the trial court. Minn.R.Crim.P. 31.02 (1984). The State claims it gave specific prior notice to the court of its intended line of questioning regarding appellant's post-arrest silence, and defense counsel assented.

■ While it is generally impermissible for the prosecution to comment on an accused's decision to remain silent following a *Miranda* warning, an appellant who fails to object at trial may forfeit that right to have the issue considered on appeal. *State v. Waukazo*, 374 N.W.2d 563, 565 (Minn.Ct. App.1985). The *Waukazo* court considered relevant that possible prejudice to appellant was reduced because appellant testified on his own behalf and that the prosecution focused on the "probative value of Waukazo's response," not his desire to remain silent. *Id.*

■ A reading of the transcript and facts reveals that appellant did not remain silent after his arrest. He merely changed his story. When the prosecutor referred to appellant's silence, he was referring to the fact that appellant told one story at the time of his arrest, and did not come forward with the new version until trial. Appellant's attorney did not timely object to the prosecutor's references to the different versions. We hold that appellant has waived this issue by failing to timely object to the cross-examination or closing argument, and that on this set of facts there was no fundamental error of law affecting appellant's constitutional rights.

### IV.

#### *Computation of Sentence*

Appellant claims, and the State concedes, that the court improperly computed his kidnapping sentence as well as his criminal history score for his criminal sexual conduct conviction.

■ The court erroneously found kidnapping to be a severity level VIII offense. Kidnapping, failure to release in a safe

place, Minn.Stat. § 609.25, subd. 2(2), is classified as a severity level VII offense. Minnesota Sentencing Guidelines, Sec. V.

■ The court also assigned a criminal history score of one for appellant's criminal sexual conduct conviction based on the kidnapping conviction pursuant to Minn.Stat. § 609.251 (1984). This is contrary to the sentencing guidelines. Comment II.B.102 of the Sentencing Guidelines provides that:

> When multiple current convictions arise from a single course of conduct and multiple sentences are imposed on the same day pursuant to Minn.Stat. §§ 609.585 or 609.251, the conviction and sentence for the 'earlier' offense should not increase the criminal history score for the 'later' offense.

*See also Walker v. State,* 394 N.W.2d 192 (Minn.Ct.App.1986). Since appellant had no prior convictions, his criminal history score for the criminal sexual conduct conviction should be zero. We therefore remand for resentencing.

### DECISION

The trial court did not abuse its discretion by admitting the photographs or excluding testimony on the victim's reputation for untruthfulness. Appellant failed to make the necessary objections at trial to preserve the post-arrest silence issue for appeal, and, on these facts, no fundamental error of law affecting constitutional rights was involved. The trial court miscalculated appellant's criminal history score.

Affirmed in part and remanded in part for resentencing.